C. A. DANIELS, AND BANKERS AND SHIPPERS INSURANCE COMPANY
OF NEW YORK, v. NATIONWIDE MUTUAL INSURANCE COMPANY.

(Filed 1 February 1963.)

**1. Insurance § 61—**

Notice to insured of the cancellation of an assigned risk automobile
liability policy is not required when the policy is cancelled by insured or
his duly authorized agent, G.S. 20-310, nor does provision in the policy
for notice if insurer cancels the policy require notice in such instance.

**2. Same—**

Insured may authorize his agent to cancel a policy of automobile lia-
bility insurance and may confer such authority on his agent at the time
a policy is issued, and nothing in the Vehicle Financial Responsibility
Act, expressly or impliedly, forbids the cancellation of such policy by
insured through a duly authorized agent.

**3. Same; Insurance § 65— Injured party may not recover against in-
surer cancelling policy at request of insured's agent prior to accident.**

At the time of making application for a noncertified risk under the
assigned risk plan, G.S. 20-314, insured financed the premium with a
finance company of which the insurance agency was also an agent, and
authorized the finance company to cancel the insurance if insured failed
to pay installments when due. The policy was assigned to another in-
surer and such insurer was paid the full premium. Insured failed to pay
an installment when due and the finance company requested cancellation,
and insurer cancelled the policy and returned the unearned premium.
Thereafter insured had a collision and the injured party recovered judg-
ment against insured. *Held:* Notice to insured of cancellation was not
required and the policy was validly cancelled prior to the accident, and
neither the injured party nor his subrogatee may recover against insurer.

APPEAL by defendant from *Crissman, J.,* June 4, 1962, Civil Term
of GUILFORD (High Point Division).

Action to recover benefits under an automobile liability insurance
policy.

The following facts are not in dispute:

On 5 January 1961 LeRoy Brand applied to Bell & Wood Insurance
Agency, Inc. (Bell & Wood) of High Point for automobile liability
insurance. He made application as a noncertified risk under the As-
signed Risk Plan. G.S. 20-314; G.S. 20-279.21; G.S. 20-279.34. He re-
quested premium financing, and signed a contract with Insurance
Finance Company, Inc., of Fayetteville (Finance Company), of which
Bell & Wood was an agent. The Finance Company agreed to (and did)
pay the premium. Brand made a down payment of $25 and agreed to
pay the Finance Company the balance of $40 in four equal monthly
installments, the first to be due 1 February 1961. The contract pro-

vides that "failure to make payment of any installment within ten days from the due date thereof shall terminate this agreement." In connection with the contract Brand executed an assignment to the Finance Company of any unearned premiums, and a power of attorney as follows: "I do hereby irrevocably constitute and appoint Insurance Finance Company, Inc., as my attorney in fact, to authorize the cancellation of said insurance policy and to receive on behalf of Insurance Finance Company, Inc., any unearned premium and to issue proper receipt for the same." The application for insurance was sent to the Department of Motor Vehicles and the Department assigned the risk to Nationwide Mutual Insurance Company (Nationwide). Upon receipt of the assignment of risk Nationwide issued its policy, in compliance with G.S. 20-279.21, to Brand for a period of one year, effective 10 January 1961, and sent a Form FS-1 (showing coverage) to the Department of Motor Vehicles. Nationwide issued and mailed to Brand an "Endorsement — Financed Premium." When the first installment was due the Finance Company, Brand failed to pay. On 28 February 1961 Nationwide received a written request from Finance Company for cancellation of the policy and return of unearned premium. Nationwide cancelled the policy as of that date and returned the unearned premium to the Finance Company three days later. On 28 February 1961 Brand paid to Bell & Wood $10.00, but it was later returned to him. On 6 March 1961 Nationwide wrote Brand, sending a copy to Bell & Wood, acknowledging his request for cancellation and advising that the Policy had been cancelled effective 28 February 1961, but Brand denies having received the letter. On 7 March 1961 Nationwide sent Form FS-4 (Notice of Termination) to the Department of Motor Vehicles. Brand on 11 March 1961, while driving the automobile described in the policy, was involved in a collision with C. A. Daniels, whose vehicle was damaged. Bankers and Shippers Insurance Company of New York (Bankers) carried collision insurance, with a $50 "deductible" provision, on Daniels' automobile. Daniels sued Brand and recovered judgment for $392.09. Nationwide declined to defend the action and pay the judgment. Bankers paid Daniels $342.09. Daniels and Bankers instituted this action against Nationwide on 20 November 1961.

The parties waived trial by jury, and the judge heard the case on facts stipulated and oral and documentary evidence, found facts, including some of the essential facts stated above, submitted to himself and answered two issues deciding in effect that the policy was issued by Nationwide and was not terminated "in accordance with the applicable status (statutes) prior to the collision," and adjudged that

plaintiffs recover of Nationwide $392.09 with interest and costs. Defendant Nationwide appeals.

*James B. Lovelace and Edward R. Hardin for plaintiffs.*

*Jordan, Wright, Henson & Nichols and G. Marlin Evans for defendant.*

MOORE, J. "Upon trial of an issue of fact by the court, its decision shall be given in writing, and shall contain a statement of the facts found, and the conclusions of law separately." G.S. 1-185. Where jury trial is waived and the court acts both as judge and jury, it is irregular for the court to render a verdict on issues submitted to itself. But in the absence of objection and exception, a new trial will not be ordered for this cause if from the judgment it can be determined what the court found the ultimate facts to be and what the legal basis of the judgment is. *Wynne v. Allen,* 245 N.C. 421, 96 S.E. 2d 422; *Parks v. Davis,* 98 N.C. 481, 4 S.E. 202. In the case at bar we infer from the court's answer to the second issue that it was the opinion of the court that the policy had not been validly cancelled because Nationwide had not given insured fifteen days notice prior to cancellation. G.S. 20-310.

Nationwide contends that the cancellation was by insured and no notice was required either by statute or by the terms of the policy. We have not had occasion under the Vehicle Responsibility Act (G.S., Ch. 20, Art. 13) to consider the question of cancellation on a factual situation such as is here presented. There are very few decisions from other jurisdictions based on similar circumstances. These authorities are favorable to defendant.

*Chamberlain v. Employers' Liability Assur. Corporation,* 194 N.E. 310 (Mass. 1935) is in point. The policy in question was issued pursuant to a compulsory automobile insurance statute. Plaintiff was injured in an automobile accident because of the negligence of one McEvoy, who was insured by defendant. Defendant had filed a certificate of coverage with the Registrar of Motor Vehicles. Plaintiff obtained judgment against McEvoy, and failing to collect the judgment sued defendant on the policy. McEvoy had executed a note to Insurance Budget Plan, Inc., a finance company which paid the premium for him, promising to pay the note in installments. The note contained an acceleration provision, made the finance company the agent for McEvoy to procure the policy, and authorized the finance company to cancel the policy if there was a default in the payment of any installment. McEvoy defaulted. The insurance was cancelled by defend-

and at the request of the finance company. This cancellation occurred before the accident in which plaintiff was injured. Plaintiff contended that the cancellation was void because the defendant had not given McEvoy the statutory notice before cancelling. The court said: "The policy was not cancelled by the insurer. Consequently provisions applicable to such cancellation do not apply. . . . The policy was cancelled . . . by the insured acting by his agent the Insurance Budget Plan, Inc. . . . (I)n the matter of cancellation of a compulsory motor vehicle liability insurance policy, the insured can act by an agent. . . ." Further: "Perhaps there are reasons why a person insured under a compulsory motor vehicle liability insurance policy should not be permitted to authorize an agent to cancel such policy, particularly in the circumstances here shown. But nothing in the statute expressly or impliedly forbids. And nothing in the ordinary principles of agency or insurance prevents. (Citing authorities) Cancellation of such a policy by the insured is not an act so personal in its nature that it cannot be delegated in the absence of statutory prohibition of such delegation." The following cases, though they do not involve compulsory insurance, are in accord with the principles stated in *Chamberlain*: *Hardware Mutual Casualty Co. v. Beals*, 158 N.E. 2d 778 (Ill. 1959); *Angelo v. Traviglia*, 155 N.E. 2d 717 (Ohio 1957); *Saskatchewan Government Ins. Office v. Padgett*, 245 F. 2d 48 (5th Cir. 1957). However, in the *Beals* case the insurance was held to be in force because the request for cancellation was a forgery, and in the *Padgett* case it was held that there had been no actual cancellation and the request therefor was conditional.

"Cancellation of an insurance policy under a provision allowing cancellation at the request of insured may be effected through agents. It is not necessary under a provision of this kind that the request for cancellation be made personally by insured, but it is sufficient if it is made by a person acting as agent of the insured." 29 Am. Jur., Insurance. s. 404, p. 752.

". . . It would seem on principle that a premium payment service plan entered into between an insured and a finance company not so connected with the insurer as to create conflicting interests would be valid and enforceable, providing the contract was fairly made, and contained no provisions in conflict with statutory regulations governing insurance contracts." 115 A.L.R. 1212.

In this jurisdiction, *Dawson v. Insurance Co.*, 192 N.C. 312, 135 S.E. 34 (1926), is strong authority for defendant's position. It involved fire insurance. The insurance agent extended credit for payment of premiums. Insured agreed that the agent might retain the policies and

cancel them if the premium was not paid by a certain date. Insured defaulted, and the agent marked the policies cancelled and mailed them to the insured. Insurer entered the cancellation on its records but sent no notice to insured. Thereafter insured's property was destroyed by fire and he sued insurer and asserted that the insurance was in force because he had not been given notice of the cancellation according to policy provisions. The policy provided that it would be "cancelled at any time at the request of the insured," and that it might "be cancelled at any time by the Company by giving to the insured five days' written notice of cancellation." The court held that agent's duties to the insurer were fully performed when the policy was issued, the extension of credit was no part of the insurance contract, and the agreement respecting cancellation was for the benefit of the agent, who was responsible to insurer for the premium. The court declared: ". . . (R)equest (for cancellation) may be made by the insured, in person, or by his authorized agent. . . . (A)uthority (to an agent to cancel) may be given prior to, or contemporaneously with the issuance of the policy. It may also be given upon condition, to be exercised in the discretion of the agent, upon the happening of the condition." It was the decision of the court that the insurance had been effectively cancelled and was not in force at the time of the fire.

Plaintiffs cite *Clark v. Employers Mut. Casualty Co.*, 90 F. 2d 667 (8th Cir. 1935), in support of their position. It is factually distinguishable. There was a conflict of interest between the finance company and the insurer. The controlling officers of the latter were the owners of the former. The business of the finance company was carried on in the offices of the insurance company, and in part for the benefit of the latter. The court distinguishes the case from *Chamberlain* and *Dawson*, and does not repudiate the principles declared in those cases. The court held invalid the authority to cancel which insured had given the finance company, for the reason that the finance company and the insurance company were so inter-related that the act of the one in cancelling the policy was the act of the other. Under the pertinent statute and the terms of the policy insurer could not cancel without giving notice.

In the instant case the policy provides that it "may be cancelled by the named insured by mailing to the Company written notice stating when thereafter the cancellation shall be effective." The statute (G.S. 20-310) does not require insurer to give any notice when the cancellation is by the insured. *Faizan v. Insurance Co.*, 254 N.C. 47, 118 S.E. 2d 303. Plaintiffs contend that the instant case is con-

trolled by *Crisp v. Insurance Co.*, 256 N.C. 408, 124 S.E. 2d 149, in which it is said: "Once the certificate (FS-1) has been issued, non-payment of premium, nothing else appearing, is no defense to a suit by a third party beneficiary against insurer. To avoid liability insurer must allege and prove cancellation and termination of the insurance policy in accordance with the applicable statute. . ." In that case insured was in default with insurer with respect to premium payments, and *insurer* had undertaken to cancel the policy and the question was whether the notice given by insurer complied with statutory requirements. In the present case the premium had been paid in full and cancellation, if any, was by insured. Brand was indebted to the Finance Company for the money borrowed by him to pay the premium; he did not owe insurer any sum on account of premium. The Finance Company is not an agent of insurer.

The court below, in the findings of fact, quotes from the "Financed Premium" Endorsement as follows: "If the Company cancels the policy it will be with advance notice to the Policyholder and the Lender." The court apparently interpreted this to mean that in event of any cancellation, by the Company or by insured, advance notice would be given by insurer. Considered contextually it merely means that existence of the contract for premium financing and the insurer's recognition of it does not waive insurer's duty to give advance notice of cancellation if "the Company" (insurer) for any reason of its own cancels the policy. The endorsement recognizes the power of attorney given by Brand to the Finance Company authorizing the Finance Company to request cancellation of the policy on Brand's behalf.

Bell & Wood was agent of the Finance Company but not of Nationwide. As to the insurance contract Bell & Wood was merely "producer." *Underwood v. Liability Co.*, 258 N.C. 211, 128 S.E. 2d 577. The Finance Company was not an agent of Nationwide. In his testimony at the trial Brand admitted the execution of the contract with the Finance Company and the power of attorney authorizing the Finance Company to request cancellation of the policy, and admitted that he was delinquent in meeting the first contract installment. In accordance with the terms of the contract and the power of attorney the Finance Company requested Nationwide in writing to cancel the policy. The policy complies with the requirement of G.S. 20-279.21. There is nothing in the Vehicle Financial Responsibility Act which expressly or impliedly forbids the cancellation of such policy by insured through a duly authorized agent. Cancellation of the policy by the insured is not an act so personal in its nature that it cannot be delegated to an agent. *Dawson v. Insurance Co., supra; Chamberlain*

v. *Employers' Liability Assur. Corporation, supra*. The power of attorney was for the benefit of the Finance Company and its security against loss if Brand failed to pay. The extension of credit and agreement that Brand might pay in installments were sufficient consideration to support it.

Nationwide was under no duty to give Brand advance notice since the cancellation was at the request of Brand's duly authorized agent.

The judgment below is

Reversed.