BOBBIE JEAN GRANT v. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

(Filed 28 February, 1968.)

**1. Insurance § 81—**
    The provisions of the Motor Vehicle Financial Responsibility Act of 1957 must be read into a policy issued pursuant to the Assigned Risk Plan and construed liberally to effectuate its purpose of providing financial protection to persons injured by the negligent operation of an automobile.

**2. Insurance § 108—**
    To avoid liability to a third party beneficiary of an assigned risk automobile insurance policy, the insurer must allege and prove cancellation and termination of the policy in accordance with the applicable statutes.

**3. Same;   Insurance § 94—**
    A purported cancellation of a policy of automobile liability insurance by an assigned risk insurer upon request by a premium finance company acting under a power of attorney in a premium finance agreement, such request arising from the insured's default in making premium payments, *is held* ineffectual to prevent recovery upon the policy by a party injured in an accident with the insured two days after the purported cancellation, in the absence of a showing by the insurer that the premium finance company had given to the insured and his insurance agent ten days' written notice of such request of cancellation pursuant to G.S. 58-60.

THIS is an appeal from *McConnell, J.,* December 11, 1967, Regular Civil Session, RICHMOND County Superior Court. In this case the plaintiff seeks to recover on a judgment previously obtained by

the plaintiff in an action against Mary Ann Stubbs (Stubbs). Plaintiff was injured in an automobile accident when riding as a guest passenger in an automobile owned and operated by Stubbs. The plaintiff contends that at the time of the accident, namely, January 9, 1964, Stubbs had a valid automobile liability insurance policy with the defendant. As a result of said accident, plaintiff had recovered a judgment against Stubbs which is the judgment that the plaintiff now seeks to recover from the defendant by virtue of the automobile insurance policy.

The defendant admits that Stubbs was assigned to it as an assigned risk in September of 1963, and that a policy had been issued to her.

At the time of the issuance of the policy, Stubbs had financed the premium through Universal Acceptance Corporation of Fayetteville, North Carolina (Acceptance Corporation) and had given a Power of Attorney to Acceptance Corporation.

On January 7, 1964, the defendant received through the mails a request from Acceptance Corporation reading: "Request is hereby made that subject policy be cancelled effective as soon after this date as statutory requirements permit. As insured failed to make payment under the terms of his contract with us, PLEASE FORWARD RETURN PREMIUM TO US FOR DISBURSEMENT. Authority for this request is set forth in the attached Power of Attorney, duly executed by the insured, and notarized." Attached to this was the Power of Attorney given Acceptance Corporation by Stubbs. The defendant thereupon cancelled the policy of insurance issued to Stubbs effective 12:01 a.m., January 7, 1964, and calculated the return premium. On January 14, 1964, the defendant prepared and mailed to the North Carolina Department of Motor Vehicles "Notice of Termination", and on January 15, 1964, mailed check for the return premiums to Acceptance Corporation and sent a letter to Stubbs advising her that the policy had been cancelled pursuant to the request based upon the Power of Attorney she had given Acceptance Corporation.

Upon these facts the lower court held that the policy of insurance had not been cancelled and was in full force and effect on January 9, 1964, at the time of the accident, and that the plaintiff recover judgment from the defendant in the amount previously recovered from Stubbs.

*Carpenter, Webb, and Golding by William B. Webb for defendant appellant.*

*Webb, Lee & Davis by Hugh A. Lee for plaintiff appellee.*

CAMPBELL, J.  It is conceded by all parties that under the applicable statutes as originally enacted in 1957 known as "The Vehicle Financial Responsibility Act of 1957" as contained in Article 13 of Chapter 20 of the North Carolina General Statutes, Section 20-309 through 20-319 as construed in the cases of *Daniels v. Nationwide Mutual Insurance Company,* 258 N.C. 660, 129 S.E. 2d 314 (1962), and *Griffin v. Hartford Accident and Indemnity Company,* 264 N.C. 212, 141 S.E. 2d 300 (1965), the insurance policy involved here would have been properly cancelled and would not have been in effect at the time of the accident in question.

The trial court held that the requisite notice, as provided by statute, and as provided by law, for the cancellation of an assigned risk policy, was not given by the defendant, and the policy of insurance referred to in the pleadings and in the stipulations was in full force and effect on January 9, 1964, at the time of the accident referred to in the pleadings and upon which judgment had been rendered against the defendant's insured.

Since this holding is contrary to the statute as originally enacted in 1957 and as construed in the *Daniels* and *Griffin* cases, *supra,* the question presented is whether the Legislature in the Session Laws of 1963 made such changes as will support the decision of the lower court.

"The policy in question having been issued pursuant to the Assigned Risk Plan and for the purpose of fulfilling the requirement of the Financial Responsibility Act of 1957, the provisions of that act, relative to the cancellation of such policies, must be read into this policy and construed liberally so as to effectuate the purpose of the act." *Harrelson v. Insurance Company,* 272 N.C. 603, 158 S.E. 2d 812 (1967).

In an action such as this where the third party beneficiary is bringing the action against the insurance company, "to avoid liability insurer must allege and prove cancellation and termination of the insurance policy in accordance with the applicable statute." *Daniels v. Nationwide Mutual Insurance Company, supra.*

Likewise, as stated in the *Daniels* case, *supra,* "Perhaps there are reasons why a person insured under a compulsory motor vehicle liability insurance policy should not be permitted to authorize an agent to cancel such policy, particularly in the circumstances here shown. But nothing in the statute expressly or impliedly forbids." Subsequent to the *Daniels* case, the Legislature in 1963 enacted Chapter 1118 which is entitled: "An Act to Provide for the Regulation of Insurance Premium Financing, Providing for the Licensing of Insurance Premium Finance Companies, Providing for Insurance Prem-

ium Finance Charges, Rules, Regulations, Administrative Hearings, and Penalties." This chapter is codified as Article 4 of Chapter 58 of the General Statutes of North Carolina and is Section 58-55 through Section 58-61.1.

As stated in *Allstate Insurance Company v. Hale*, 270 N.C. 195, 200, 154 S.E. 2d 79 (1967).

> "The primary purpose of the law requiring compulsory insurance is to furnish at least partial compensation to innocent victims who have suffered injury and damage as a result of the negligent operation of a motor vehicle upon the public highway. Insurance covering liability arising out of the ownership, maintenance and use of a motor vehicle on the highway in the amount required by statute is mandatory. If the policy exceeds the amount required, the policy to the extent of the excess is voluntary. Voluntary insurance is contractual and determines the rights and liabilities of the parties *inter se*. Assigned risk insurance is compulsory both as to the insurer and the insured, made so by law. Such policy must be interpreted in the light of the statutory requirement rather than the agreement or understanding of the parties. The requirements of the statute with respect to cancellation must be observed or the attempt at cancellation fails. Such policies 'are generally construed with great liberality to accomplish their purpose'."

The 1963 Act now codified as G.S. 58-60 provides:

> "*Procedure for cancellation of insurance contract upon default; return of unearned premiums; collection of cash surrender value.* — When an insurance premium finance agreement contains a power of attorney or other authority enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled unless such cancellation is effectuated in accordance with the following provisions:
>
> (1)  Not less than ten (10) days written notice be furnished the insured or insured's shown on the insurance premium finance agreement of the intent of the insurance premium finance company to cancel his or their insurance contract or contracts unless the defaulted installment payment is received. A notice thereof shall also be mailed to the insurance agent.
>
> (2)  After expiration of such period, the insurance premium finance company shall mail the insurer a request for can-

cellation, including a copy of the power of attorney, and shall mail a copy of the request for cancellation to the insured at his last known address as shown on the insurance premium finance agreement.

(3) Upon receipt of a copy of such request for cancellation notice by the insurer or insurers, the insurance contract shall be cancelled with the same force and effect as if the aforesaid request for cancellation had been submitted by the insured himself, without requiring the return of the insurance contract or contracts. * * *"

In the instant case, there is no evidence at all that this statute was complied with. In fact, the request for cancellation submitted by the Acceptance Corporation should have alerted the defendant that something had not been complied with because the request stated: "Request is hereby made that subject policy be cancelled *effective as soon after this date as statutory requirements permit."* (emphasis added.)

At any rate, and we so hold, the burden is upon the insurance company to show that all statutory requirements have been complied with, including the ten days written notice by the premium finance company to the insured together with said notice to the insurance agent, prior to the premium finance company requesting cancellation of the policy. We do not think this unduly burdens the insurance company, for that the insurance company has received and has on hand the full premium and before making cancellation and returning any portion of the unearned premium, the insurance company can require the premium finance company to satisfy fully the insurance company that all statutory notices have been given, otherwise, the insurance company will not return any of the premium. With this ability on the part of the insurance company to use a "money talks" approach, we think the primary purpose of the law will be more fully complied with and innocent victims more adequately protected. *cf. Cannon v. Merchants Mutual Insurance Co.,* 35 Misc. 2d 625, 230 N.Y.S. 2d 282 (1962); *White v. Edwards,* ...... Mass. ......, 227 N.E. 2d 354 (1967). Furthermore, if the premium finance company misleads the insurance company wrongfully by requesting cancellation of the policy, the insurance company can seek redress from the premium finance company. *Johnson v. General Mutual Insurance Company,* 271 N.Y.S. 2d 428 (1966).

Since in the instant case the defendant does not show that this provision of the law had been complied with prior to cancellation of the policy, we find that the court below was correct in its holding

that the policy in question was in full force and effect at the time of the accident and that it had not been theretofore cancelled.

Affirmed.

MORRIS and PARKER, JJ., concur.